**UNITED AIRLINES, Inc., Plaintiff**

**v.**

**RON E. PRITCHARD, JR., Defendant**

High Court of American Samoa
Trial Division

FJ No. 2-88

May 25, 1990

Before REES, Associate Justice, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendant, Togiola T.A. Tulafono

This proceeding concerns the ownership of funds seized pursuant to a writ of garnishment. Plaintiff United Airlines registered a foreign money judgment against defendant Ron E. Pritchard Jr., and garnished the rental payments owed by tenants in the Ronald E. Pritchard Building.

Plaintiff takes the position that the building, and accordingly the rental payments, belong to defendant Pritchard, the judgment debtor. At the outset of this proceeding Mr. Pritchard himself took the position that the building belonged to the estate of his late father. The estate was later closed and all its assets distributed to Mary Pritchard, widow of decedent Ronald E. Pritchard and mother of the defendant, Ron E. Pritchard Jr. Mary Pritchard then intervened in this proceeding to assert her ownership of the rental proceeds.

We find the facts to be as follows:

1) In 1949 Ronald E. Pritchard entered into a land lease with Lutu Simaile, sa'o of the Lutu family of Fagatogo. Mr. Pritchard (hereinafter "Ronald Sr.") then constructed the Ronald E. Pritchard Building on the land. The lease agreement gave the lessee the right to remove any buildings on the leased land at the conclusion of its original fifteen-year term or of any renewal. It also gave the lessee (Ronald Sr.) an option to renew for an additional fifteen years.

2) The parties to the 1949 lease entered into a new fifteen-year lease in December of 1951. This agreement was identical to the 1949 lease in all respects relevant to the present proceeding. Its original term extended until December 31, 1966.

3) The parties agree that the land lease was renewed, presumably at some time during the 1960s. We have no evidence of the circumstances of such renewal. Plaintiff maintains that the renewal was of the original 1949 lease and therefore expired in 1979; defendant (Ronald Jr.) and intervenor (Mary Pritchard) assert that the renewed term did not expire until 1981.

5) Ronald Sr. died in 1968. His will was admitted to probate in 1977. Mary Pritchard was the administratrix and also the sole legatee. *In re Estate of Pritchard*, PR No. 18-77.

6) In 1982 there was another lease, this one signed by Lutu Teneri Fuimaono for the Lutu family and by "Ronald E. Pritchard" as "Lessee." The "Ronald E. Pritchard" who negotiated and signed this agreement was Ronald Jr., the present defendant.

7) At the hearing on the present motion, Ronald Jr. testified that he negotiated and signed the 1982 lease not in his own capacity but as agent for Mary Pritchard, administratrix of the estate of Ronald Sr.

8) The 1982 lease document was prepared by the attorney representing lessor Lutu. On page 5 of this document the notarized signature of Ronald Jr. and the typed identification of the lessee (immediately below the signature line) both read "Ronald E. Pritchard." The notary's certificate following the signature line refers to "Ronald E. Pritchard, Jr., Lessee." The attorney who prepared the document testified in the present proceeding. The gist of his testimony was that he could not recall any discussion or deliberation as to the precise identity

57

of the lessee. The implication is that Ronald Jr. was inadvertently named as lessee because his name was virtually identical to that of the former lessee and/or because he was the person with whom Lutu was negotiating in 1982.

9) A 1982 lease of office space in the Pritchard Building to South Pacific Traders, Inc., names "R.E. Pritchard" as lessor. Ronald Jr. signed the document as "R.E. Pritchard." We have no evidence of who is designated as lessor on any other such agreements.

10) At least since 1985 there have been only three tenants in the Pritchard Building: South Pacific Traders, Island Printing Co., and a law firm now known as Ward & Associates.

11) All three tenants were issued writs of garnishment in the present proceeding. The writs required, inter alia, that the garnishees hold and secure any funds in their possession that were owed to "Ron E. Pritchard." As a result of these writs and of further communications between the garnishees and counsel for plaintiff, garnishee Ward & Associates began depositing its rent checks with the Clerk of the High Court pending the outcome of the present proceeding. Garnishee South Pacific Traders began holding the money it would otherwise have paid in rent on its space in the Pritchard Building.

12) Mary Pritchard then intervened in her capacity as administratrix of the Estate of Ronald E. Pritchard (Ronald Senior). As it happened, the Court had previously ordered counsel for Mrs. Pritchard to file an interim accounting of the status of the Estate and to take immediate steps toward final distribution. This previous order had arisen out of a routine review of old Court files and had nothing to do with the present proceeding. *See* Order, PR No. 18-77, issued November 14, 1988.

13) At the hearing on the Estate's motion to intervene in the present proceeding, the Court suggested that the accounting already ordered in the probate case --- with particular reference to receipts and disbursements of rental proceeds from the Pritchard Building during the eleven years the Estate had been in existence --- would be essential to a determination of the rights of the Estate as against the creditors of Ronald Jr. The Court suggested that such an accounting would show whether the administratrix and other interested parties, prior to the assertion of the creditor's interest, had treated these funds as though they were property of the Estate or of Ronald Jr.

14) The administratrix subsequently declined to file an accounting of the disposition of rental proceeds received during the pendency of the Estate. Because the administratrix, Mary Pritchard, was also the sole beneficiary, and because there were no creditors of the Estate, the Court allowed the Estate to be closed and all its assets distributed to Mrs. Pritchard without insisting on an accounting of the rental proceeds.

15) The Court reiterated to counsel for the Estate, however, that if the administratrix refused to present any evidence with regard to prior treatment of the rental proceeds by herself and Ronald Jr., the Court would order that all such proceeds garnished during the pendency of the Estate be released to the judgment creditor. Counsel responded that the administratrix understood this and that she still did not wish to file an accounting. The Court then ordered that the garnished funds be released to the judgment creditor.

16) Pursuant to the Court's order, $4800 was distributed to plaintiff by the Clerk of the High Court. This consisted entirely of money paid into the registry of the Court by garnishee Ward & Associates. An undisclosed amount, consisting of several months' rent from South Pacific Traders, was paid directly to counsel for plaintiff by garnishee South Pacific Traders. The third tenant, Island Printing Co., has not paid anything to plaintiff, apparently on the ground that its landlord is R. Pritchard Ground Services and that it therefore owes nothing to Ronald E. Pritchard Jr.

17) On June 5, 1989, counsel for the Estate filed a Proposed Decree of Final Distribution. The proposed order, contrary to the Court's previous order from the bench, appeared affirmatively to recognize the Estate as owner of the Pritchard Building. The Court altered the proposed order by inserting the words "or a claim thereto," and by adding the handwritten notation:

> The Court makes no judgment with regard to the validity of any controverted claim to any of the property listed in the distribution, but distributes to Mrs. Pritchard such interest as the Estate may have had.

Decree of Final Distribution, PR No. 18-77, issued June 7, 1989.

59

18) On June 28, 1989, Ronald Jr. delivered to the tenant/garnishees a "Notice to Tenants." It contained the erroneous statement that "at the conclusion of the Pritchard Estate probate, the Pritchard Building was distributed, together with all profits therefrom, to Mary Pritchard as her sole and exclusive property." (This is directly contrary to the Court's clear statement in the final decree that it was *not* adjudicating the rights of the Estate as against other claimants to the property, but only distributing to Mrs. Pritchard "such interest as the Estate may have had.") The notice also advised the tenants that "Mary Jewett Pritchard has appointed her son, RONALD E. PRITCHARD, Jr., her attorney-in-fact to handle all her business." It then directed tenants to make all future rent checks payable to Mary Pritchard and to send them to Ronald Jr.

19) After receiving this notice, garnishee South Pacific Traders stopped holding its rent checks and began sending them to Ronald Jr. as directed in the notice. Ward & Associates continued depositing its rent checks in the registry of the Court.

20) About a month later, counsel for Mrs. Pritchard (apparently in her capacity as an individual rather than as administratrix of the former Estate) filed a motion in the probate case, PR 18-77. The motion requested that the Court dissolve all writs of garnishment in the present proceeding and release all garnished funds to Mrs. Pritchard. An accompanying affidavit of counsel stated that "Mary J. Pritchard was distributed . . . the Pritchard building as her s[o]le and exclusive property from the R.E. Pritchard Estate."

21) At the hearing on Mary Pritchard's motion, the Court reiterated that the decree of final distribution had no bearing on the rights of the Estate or of Mrs. Pritchard as against third parties, but simply distributed to Mrs. Pritchard whatever interest the Estate had. The Court suggested that if Mrs. Pritchard now wished to assert her right to the rental proceeds, she should move to substitute herself for the Estate in the garnishment proceeding.

22) Mrs. Pritchard then moved to intervene in the present proceeding. In a memorandum accompanying the motion, counsel asserted yet again that the Court had "distributed to Intervenor the building called Pritchard Building," and concluded that "Mrs. Pritchard is entitled to receive the rents as her personal property."

60

23) Counsel for plaintiff, judgment creditor United Airlines, filed an answer to the complaint in intervention. The answer alleges that intervenor Mary Pritchard "expressly or impliedly assigned or gifted" her interest in the building to Ronald Jr. when he signed the 1982 lease on his own behalf. In the alternative, the answer alleges that the Estate lost its claim to the building by neglecting to renew the lease or remove the building within a reasonable time after expiration; and that Ronald Jr. then acquired the building by negotiating a new lease with Lutu.

24) Mary Pritchard's motion to intervene was granted. The Court subsequently held a hearing on the issues raised by the complaint in intervention. Mary Pritchard herself did not testify at the hearing. Ronald Pritchard Jr. did testify as a witness for Mrs. Pritchard. He presented the following evidence with respect to the way he and his mother had handled past rental proceeds:

a) Between 1985 and the onset of the present proceeding, each of the three tenants wrote its rent checks to a different payee. South Pacific Traders paid $1500 per month to Ronald E. Pritchard. Island Printing Co. paid $1600 per month ($1200 during part of 1985) to "R. Pritchard Ground Services," an entity controlled by Ronald Jr. The law firm has paid $400 per month ($300 during 1985) to "R.E. Pritchard Estate."

b) The tenants' rent checks were given to Ronald Jr. or delivered to the offices of Pritchard Travel Services, another entity then controlled by Ronald Jr.

c) All checks, regardless of the designated payee, appear to have been deposited into one of two bank accounts: until mid-1987 an account at the Amerika Samoa Bank labeled the "R.E. Pritchard Building Account" and since then an account at the Bank of Hawaii in the name of "R.E. Pritchard Building Estate."

d) All transactions into and out of these bank accounts were handled by Ronald Jr. or by his former wife. Ronald Jr. testified that he was acting at all times for his mother in her capacity as administratrix

61

of the Estate. He testified that withdrawals from the accounts were made for three purposes: repairs and maintenance on the Pritchard Building; "family expenses," principally having to do with Samoan traditional obligations; and unspecified expenditures by Ronald Jr. himself. All withdrawals in this last category, according to Ronald Jr., were regarded by himself and by his mother as loans.

25) The Court requested counsel for Mary Pritchard to provide copies of all records of the two building bank accounts. The record was held open after the hearing pending receipt of such records. Counsel has provided the Court with records of deposits into the account, but not with records (e.g., cancelled checks) pertaining to the amount, nature, and recipient of withdrawals from the account. We are therefore unable to determine the extent to which the account was used for building and family expenses and the extent to which it was used for personal expenses of Ronald Jr.

26) The only information we do have about withdrawals consists of two bank statements from December 1986 and June 1987. Assuming that all rent checks were deposited into the accounts during the seven months spanned by the two statements, we calculate that about $46,000 was withdrawn during these seven months. That most or all of this money was consumed by building maintenance or traditional family expenses is conceivable but not likely. Intervenor presented no evidence of such expenses during this or any other period.

27) Because the intervenor failed to produce evidence that was within her exclusive possession with respect to the amount and purpose of expenditures, and because it is clear from the little evidence we do have that substantial amounts were withdrawn, we conclude that Ronald Jr. did withdraw substantial amounts for his own personal use.

28) The evidence reflects that Mary Pritchard knew of Ronald Jr.'s personal expenditures from the building accounts and did not disapprove of them. We have no reason to disbelieve his testimony that both he and his mother regarded them as loans. There is no evidence, however, that any accounting has been required or given with respect to the precise amount or purpose of such loans.

29) Since July of 1989 at least one tenant has begun designating Mary Pritchard as the payee on its rent checks. The checks are then

delivered into the possession of Ron Jr., as was done with rent checks made out to various payees during the pendency of the Estate. Neither the testimony of Ronald Jr. nor any other evidence presented by counsel for Mary Pritchard suggests any other changes in the manner in which rental proceeds have been handled. We therefore presume that there have been no such changes: that Ronald Jr. deposits the checks into a bank account which is under his own control; that withdrawals from this account are for building expenses, traditional family obligations, and personal expenses of Ronald Jr.; and that Ronald Jr. and his mother both regard his withdrawals for personal expenses as loans.

On these facts we conclude intervenor Mary Pritchard rather than her son Ronald Jr. is the owner of the Pritchard Building. We also conclude, however, that the intervenor has allowed Ronald Jr. unlimited personal access to the rental proceeds and that they are therefore subject to garnishment by his judgment creditor.

The evidence does not sustain plaintiff's contention that Mary Pritchard gave the building to Ronald Jr. by allowing him to sign the 1982 lease in his own name. There is no evidence that Mary Pritchard ever saw the lease or knew that Ronald Jr. was designated as the lessor.

Nor can we accept plaintiff's alternative argument: that the Lutu family acquired the building when the Estate did not remove it within a reasonable time after the expiration of the original lease, and that Ronald Jr. acquired it from the Lutu family by signing the 1982 lease. In the first place, it appears that the 1951 lease was renewed and did not expire until December 31, 1981. Negotiations between Lutu and Ronald Jr. began even before this date, and the new lease was signed soon thereafter. Moreover, the testimony of Lutu's attorney is far more consistent with the Pritchards' version of the 1982 events than with the complicated series of transfers suggested by plaintiff. Finally, we note that the law firm retained by Ronald Jr. in the 1982 lease negotiations, which was also a tenant in the Pritchard building, continued to make its rent checks out to the Estate rather than to Ronald Jr. Nobody believed at the time that ownership of the building was being transferred from the Estate to Ronald Jr. Rather, all parties including Lutu and his attorney apparently felt that the building belonged to "the Pritchards" and that Ronald Jr. was the Pritchard with whom one dealt on such matters.

It does not follow, however, that the plaintiff cannot garnish the rents. Had these funds not been garnished, they would have been put into the possession of Ronald Jr. and thence into an account which he

63

controlled and to which he had apparently unlimited access to satisfy his personal needs and wants. Funds that are in the judgment debtor's possession, freely available for his personal expenses and actually used by him for such expenses, are similarly available for the satisfaction of his debts.

The situation would be quite different if the evidence showed that Ronald Jr. was a fiduciary whose personal expenditures had been unauthorized by his principal, or even that the principal had imposed important limitations on the purpose or amount of such expenditures. In the absence of any evidence that Mary Pritchard has ever placed any such restrictions or limitations on Ronald Jr.'s personal use of the funds, however, she cannot be heard to interpose her rights in order to deny his creditors the very access he has been permitted. *See Landrigan v. Opelle*, 5 A.S.R.2d 155 (1987). Nor does it make any difference that amounts expended by Ronald Jr. for his own personal use may have been regarded as loans which he would eventually have to repay. A judgment creditor's rights do not depend upon whether the debtor has obtained money by earning it or because his mother gave or lent it to him.

This is not to say that the intervenor cannot re-order her affairs so as to insulate the rental proceeds from her son's creditors. She can do so by taking personal control of such proceeds, by designating another agent to control them for her, or by imposing such limitations on her son's use of them as to make them clearly distinguishable from his own personal funds. She can even do this and then give or lend her son some of the money. It will be subject to the claims of his creditors as soon as it is within his control and available for his personal use, but not before.

The only thing the intervenor cannot do is to place in her son's possession and control a fund that will be freely available to him but not to his creditors. The evidence reflects that this has been the arrangement with the Pritchard Building rentals, both before and after the closing of the Estate and the July 1989 "Notice to Tenants."

Accordingly, we hold that all Pritchard Building rentals accruing after service of the writs of garnishment should have been held and secured in accordance with the writs, and we order that all such sums be released to the judgment creditor. This order will stand until the judgment debt is satisfied or until the intervenor shows that the order is no longer appropriate.

We are not now presented with the question of what action, if any, should be taken with respect to the failure of garnishees Island Printing Co. and South Pacific Traders to hold and secure all rental payments.

The relief sought by the complaint in intervention is denied.